UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JANINE R. R., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 4:24 CV 422 JMB |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the ruling is affirmed.

**I. Procedural History**

On December 8, 2021, Plaintiff Janine R. applied for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401, *et seq.* (Tr. 13, 213-14). Plaintiff also filed for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*, on November 30, 2021 (Tr. 13, 215). Plaintiff alleges she became unable to work on November 1, 2020, due to depression, obsessive compulsive disorder, attention deficit disorder, and bipolar disorder (Tr. 65, 87). Plaintiff's claims were denied initially and upon reconsideration, and she requested a hearing before an ALJ (Tr. 64-95, 102-38, 141-42). At the February 9, 2023, administrative hearing before the ALJ, Plaintiff appeared with counsel and testified concerning the nature of her disability, her functional limitations, and her past work (Tr. 36-52). The ALJ also

heard testimony via telephone from Darrell Taylor, a vocational expert ("VE") (Tr. 55-70).  On April 28, 2023, the ALJ issued a decision finding Plaintiff was not disabled and denying benefits (Tr. 13-26).  Plaintiff sought review of the ALJ's decision before the Appeals Council of the Social Security Administration, which was denied on January 16, 2024 (Tr. 1-5).  Accordingly, the decision of the ALJ is the final decision of the Commissioner.  As Plaintiff has exhausted her administrative remedies, her appeal is properly before this Court.  See 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

Plaintiff's arguments relate to her adaptive limitations arising from her mental impairments.  The Court will therefore focus on the evidence pertaining to this particular issue.

### A. Disability and Function Reports and Hearing Testimony

Plaintiff was born in January 1980 and was 40 years old on the alleged onset date (Tr. 65).  She reported obtaining a high school degree, attending college for several years, and prior work experience as a bartender, server, and day care worker (Tr. 41-42, 245, 273-80, 305-06).

In a January 2022 Function Report, Plaintiff stated that her mental impairments prevent her from accomplishing daily tasks (Tr. 261).  She reported assisting in the care of her elderly grandfather and his girlfriend; walking, driving a car, and using public transportation; caring for a pet rabbit; and running errands for her mother, including shopping for groceries, rabbit supplies, and toys for her niece and nephew (Tr. 264, 266).  Plaintiff qualified, however, that it often takes her "a while" to complete these tasks, and that she experiences anxiety around people (Tr. 264, 266).  At home, Plaintiff does laundry, dusts, vacuums, sets the table, washes dishes, puts away groceries, tidies, takes trash to the curb, gets mail, and waters the lawn (Tr. 266).  Although Plaintiff does not cook because she feels self-conscious, she is able to prepare simple meals for herself (Tr. 266).  Plaintiff also reads on a daily basis and watches TV (Tr. 268).  Plaintiff reported

handling her own finances, and while she has no problems getting along with others, she avoids social activities (Tr. 267-68). Plaintiff stated that because of her condition, she no longer keeps in touch with anyone, and that she can either sleep for more than 16 hours at a time or be awake for two to four days straight (Tr. 264). According to Plaintiff, her general lack of motivation impacts her ability to maintain self-care, and she needs reminders at times to take her medicine (Tr. 264-66).

With respect to her ability to concentrate and follow instructions, Plaintiff indicated she can pay attention for the length of a full movie, she does not finish conversations or tasks that she starts, and she is capable of following directions through repetition and understanding (Tr. 269). While she gets along with authority figures, Plaintiff maintains she has difficulty accepting rules and instruction (Tr. 269). As to her ability to handle stress and changes in routine, Plaintiff stated that she does not want responsibility for others, decisions, or deadlines, and that she does not "have routines" (Tr. 270).

At the February 2023 Hearing, Plaintiff testified that she stopped working in November 2020 because her partner at the time made her stop, and that she has been unable to return to work due to her mental impairments (Tr. 42-43). Plaintiff explained that she has been working on improving her mental health with a counselor and through dialectical behavioral therapy ("DBT"). She indicated a fear of regression upon reentering the workforce, stating:

> I am scared of going to work knowing these issues that I have not that I just ignored before. Like I—with talking to bosses and, like following instructions. All these things that I'm aware of now, I get embarrassed very easily. And I—I don't take criticism very well. I've [sic] have a hard time following instructions. I'm really scared I'm going to walk into a job and feel like an idiot, because I'm going to notice all my faults.

(Tr. 43-44). Plaintiff also explained that prior to quitting her job, her work caused her to have "nervous energy," which manifested physically and caused difficulty speaking and tic-like behaviors, even though she was on medication (Tr. 44-45).

Plaintiff further testified that is difficult for her to leave the house, and that she only does so on a weekly basis to visit her grandpa's girlfriend, attend therapy, and run an errand or two at the grocery store for her mother (Tr. 45). She engages in household chores such as dusting and vacuuming, and she mostly keeps her living space "clean and habitable," but she occasionally experiences difficulty and upset emotions completing chores out of order (Tr. 45-47). Plaintiff indicated that she has "been doing a lot better" with medication compliance, but that she doesn't notice a difference apart from spending a little more time with her parents, and that she sometimes misses doses because she sleeps a lot (Tr. 47). When asked about her ability to take instructions well, Plaintiff explained it is like she "blank[s] out" and doesn't understand what is being asked of her (Tr. 48-49). When asked about her ability to take criticism, Plaintiff stated that she "just won't do whatever it is" (Tr. 49). She further indicated that she does not tend to finish tasks she starts (Tr. 49-50).

The VE testified that Plaintiff's past work as a bartender, server, and daycare worker was light exertional and semiskilled (Tr. 57-58). The VE was asked to determine whether someone of Plaintiff's age, and with her education, work experience, and specific functional limitations, would be able to perform her past work (Tr. 58-59). These functional limitations included the ability to complete simple, routine tasks with minimal changes in job duties and setting; avoidance of fast-paced production work (i.e., hourly quotas); and occasional interaction with supervisors, co-workers, and the general public (Tr. 58-59). The VE testified that such hypothetical person would not be able to do Plaintiff's past relevant work, but that other jobs exist in the national economy

which the individual could perform, including food service, packing, and cleaner positions (Tr. 59).

The ALJ then questioned the VE regarding the implications of the hypothetical individual being off-task more than 15% of the workday (Tr. 59). The VE testified that in his professional opinion it would likely result in termination after a period of time, and that "[e]ven one absence in a one-month period that occurred over two consecutive months would result in termination or two or more in a given month" (Tr. 59-60). When asked about the hypothetical individual's inability to sustain concentration on even simple tasks for two hours, or inability to respond appropriately to criticism, the VE indicated that the individual would not ultimately be able to maintain employment (Tr. 60).

## B. Medical Opinion and Evidence

Plaintiff's records demonstrate that she sought psychiatric care from Dr. Javed Qasim at Volunteers in Medicine West County ("VIM"), beginning as early as 2018 (Tr. 333). At various visits between December 2020 and December 2022, Dr. Qasim noted that Plaintiff was generally "med compliant," had "calm, pleasant clear speech," was doing "ok" or "real good," and presented with a "good" or "fine" mood (Tr. 337, 338, 339, 340, 359, 393, 395). On several occasions, Plaintiff reported mood swings, feelings of depression, difficulty sleeping, short term breaks in her medication, and intermittent substance abuse (Tr. 349, 359, 393, 394, 395, 396, 397). During her visits, Dr. Qasim discussed the importance of medication compliance, and he recommended Plaintiff continue taking her prescribed medications, which included Lithium and Sertraline (Tr. 337-40, 359, 393-97).

In a January 2022 Medical Source Statement ("MSS"), Dr. Qasim indicated that because of Plaintiff's bipolar disorder and attention deficit-hyperactivity disorder ("ADHD") she would

need to leave work prematurely or be absent four or more days a month, and her symptoms would cause her to be off task more than 25% of the time (Tr. 351). Dr. Qasim also indicated that Plaintiff had mostly moderate to marked limitations in the abilities of understanding and memory, sustained concentration and persistence, social interaction, and adaptation (Tr. 351-52). With respect to Plaintiff's abilities to carry out detailed instructions and respond appropriately to changes in the work setting, Dr. Qasim indicated these abilities were extremely limited (Tr. 352).[1]

Also in January 2022, Plaintiff reported to VIM "to discuss evaluation for SS disability and Medicare determination" (Tr. 326-27). The provider, Dr. David Miller, noted Plaintiff was "[d]oing well when on her medications" but was "not taking them regularly with good effect," and he recommended she continue care with Dr. Qasim and counselor Jessica Craig, LPC (Tr. 326). Dr. Miller noted Plaintiff presented as awake, alert, conversant, pleasant, and cooperative, with occasional pressured speech, good eye contact, and intact insight and memory (Tr. 326). Dr. Miller listed bipolar disorder and ADHD as two of Plaintiff's diagnoses, along with medications she was taking to treat the conditions, including Bupropion, Lithium, and Sertraline (Tr. 327).

Dr. Miller also completed a January 2022 MSS, listing Plaintiff's bipolar disorder, ADHD, and depression as relevant diagnoses; "excess sleep" as one of her symptoms; and counseling and "talk therapy" as part of her treatment (Tr. 354-356). Dr. Miller indicated that Plaintiff's symptoms would cause her to be off-task 10% of the time in an eight-hour workday, that she was capable of "moderate stress work (normal work)," and that on average she would have to miss one day of

---

[1] According to the MSS, an "extreme" limitation is defined as an impairment level that "preclude[s] useful functioning" (resulting in a "90% overall reduction in performance"); a "marked" limitation is defined as an impairment level that "seriously interferes with the ability to function independently" (resulting in a "60% overall reduction in performance"); and a "moderate" limitation is defined as an impairment level that is "compatible with some, but not all, useful functioning" (resulting in a "30% overall reduction in performance") (Tr. 351).

work per month (Tr. 356). Dr. Miller also made the following notation: "strong work ethic" (Tr. 356).

From February through April 2022, Plaintiff sought treatment from LPC Craig for mood disorder and related symptoms (Tr. 358, 360-64). In a February 20, 2022, visit via zoom, LPC Craig noted Plaintiff presented as alert, oriented, and engaged, with a "euthymic" mood, and she was able to "talk through thoughts that support behavioral choices, gaining insight that behaviors don't just occur" (Tr. 360).

In a May 2022 consultation with Dr. Nicholas Evans, Dr. Evans noted that Plaintiff presented as "alert and oriented to person, place, and time," "cooperative," and "mood appropriate" (Tr. 370-72). Dr. Evans further noted that although Plaintiff had "rapid and pressured speech," she answered questions "appropriately" (Tr. 372).

In a May 2022 consultation with Dr. Shannon Clark-Sienkiewicz, Plaintiff reported a history of depression, but indicated that her current mood was stable, and that she had been taking her medications consistently (Tr. 374-76). Dr. Clark-Sienkiewicz noted that Plaintiff was "alert and oriented x4," but that she was restless during the interview, moved chairs to be further away from the door, was agitated, and appeared anxious (Tr. 374, 377). Dr. Clark-Sienkiewicz further noted she was "friendly, polite, and cooperative" with examination procedures; her social skills were appropriate; her speech was pressured and difficult to understand at times, but otherwise normal; her mental abilities were "somewhat limited for participation in the examination"; and her affect was "positive to neutral" (Tr. 377). Dr. Clark-Sienkiewicz determined that Plaintiff's abilities to adapt and manage herself and interact with others were moderately limited; that her ability to understand, remember, or apply information was not limited; and that her concentration,

persistence, or maintaining pace abilities were markedly limited (Tr. 378). Dr. Clark-Sienkiewicz listed bipolar disorder as a diagnosis, with a prognosis of "fair to poor" (Tr. 378-79).

In July 2022, agency Dr. Marsha Toll evaluated Plaintiff's mental functioning (Tr. 90-94). Upon review of Plaintiff's medical records, Dr. Toll noted that while Plaintiff does have "intermittent periods of hypomania and mild depression," she "continues to report performing simple tasks daily, drives, [and] goes out alone" (Tr. 92). Dr. Toll concluded that "[t]he severity, frequency, intensity and duration of [Plaintiff's] reported intermittent symptoms are not such that would indicate marked level of severity given the longitudinal, functional, and objective evidence in file" (Tr. 92). Dr. Toll found Plaintiff had several moderate limitations in mental functioning, including the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to interact appropriately with the general public, and the ability to respond appropriately to changes in work setting (Tr. 93-94). In all other areas, Dr. Toll found no significant limitations (Tr. 93-94). Dr. Toll determined that Plaintiff was "capable of adapting to changes in the workplace that are predictable and introduced gradually but would not be able to adjust to intense and/or abrupt variations in routine" (Tr. 94).

Plaintiff continued to seek treatment from LPC Craig from August through November 2022, during which she engaged in cognitive therapy and discussed her mood dysregulation, occasional challenges with medication compliance, and her participation in group DBT sessions (Tr. 409-18). In a December 2022 MSS, LPC Craig indicated that Plaintiff's bipolar disorder and related symptoms would cause her to miss four or more days of work a month and be off task more than 25% of the time (Tr. 382). LPC Craig indicated that Plaintiff had mild, moderate, marked, and extreme limitations in various categories of understanding and memory, sustained concentration and persistence, social interaction, and adaptation (Tr. 382-83). As relevant, LPC

Craig specifically identified the following areas in which Plaintiff was moderately limited: the ability to ask simple questions or request assistance, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness (Tr. 383).

In a December 11, 2022, visit with Dr. Qasim, Plaintiff reported taking her medication regularly and "feeling better" (Tr. 393). During visits with LPC Craig in January 2023, Plaintiff reported difficulty sleeping, decreased motivation, and missed medications (Tr. 399-403).

### III. Standard of Review and Legal Framework

To be eligible for disability benefits, a claimant must prove that she is disabled under the Act. Baker v. Sec'y of Health & Hum. Servs., 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will be found to have a disability "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Social Security Administration has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520(a)(4); Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). "Steps one through three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her

disability meets or equals a listed impairment." Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009) (citation omitted); see also Bowen, 482 U.S. at 140-42 (discussing the five-step process). "If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five." Pate-Fires, 564 F.3d at 942. "Prior to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is the most a claimant can do despite her limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work, reviewing the claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(e)-(f). The burden at step four remains with the claimant to prove her RFC and establish that she cannot return to her past relevant work. Moore, 572 F.3d at 523; see also Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). If the ALJ holds at step four that a claimant cannot return to past relevant work, the burden then shifts at step five to the Administration to establish that the claimant maintains the RFC "to perform a significant number of jobs within the national economy." Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001) (citation omitted); see also 20 C.F.R. § 404.1520(g).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole." Pate-Fires, 564 F.3d at 942 (quotation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (quotation and citation omitted). "[T]he threshold for such evidentiary sufficiency is not high." Id. Stated another way, substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (quotation omitted). In determining whether the evidence is substantial,

the Court considers evidence that both supports and detracts from the ALJ's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (citing Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id.; see also Stewart v. Sec'y of Health & Hum. Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (setting forth factors the court must consider). Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

### IV.  **The ALJ's Decision**

The ALJ's decision in this matter conforms to the five-step process outlined above (Tr. 20-33). The ALJ initially determined that Plaintiff had not engaged in substantial gainful activity since November 1, 2020, the alleged onset date of her disability (Tr. 22). At step two, the ALJ found that Plaintiff had the severe impairments of major depressive disorder and ADHD (Tr. 15-

16).  The ALJ further found her alleged back pain to be non-severe and her substance abuse to be immaterial to the decision (Tr. 23).  The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  The ALJ specifically addressed listings 1.15, 1.18, 12.04, and 12.11 (Tr. 23-24).

The ALJ next determined that Plaintiff had the RFC to perform "a full range of work at all exertional levels, but with the following non-exertional limitations: "She is able to complete simple, routine tasks with minimal changes in job duties and setting.  She should avoid fast-paced production work and she should avoid hourly production quotas.  In addition, the claimant can interact occasionally with supervisors, co-workers and the public."  (Tr. 25).  As relevant, in making the RFC determination, the ALJ found Dr. Toll's opinion to be persuasive and LPC Craig's opinion to be unpersuasive (Tr. 30-31).

At step four, the ALJ concluded that Plaintiff is not capable of returning to her past relevant work as a bartender, server, or daycare worker (Tr. 31).  However, the ALJ found at step five that Plaintiff could perform other work as a food service worker, hand packer, or cleaner (Tr. 32).  Finally, the ALJ found that Plaintiff was not disabled within the meaning of the Act from her alleged onset date to the date of the decision (Tr. 32-33).

## V. Discussion

Plaintiff claims that the ALJ erred in assessing her RFC by failing to adopt some of the limitations included in Dr. Toll and LPC Craig's medical opinions.  Plaintiff further contends that the ALJ failed to adequately explain these omissions in accordance with Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (S.S.A. 1996) (discussing an ALJ's duty to consider and explain evidence underlying the RFC finding; requiring an ALJ to consider and address medical

source opinions in the RFC assessment). (ECF No. 10). With respect to Dr. Toll, Plaintiff argues that the ALJ offered no explanation for omitting her opined limitation to "gradual and predictable changes." Id. at 5-11. As to LPC Craig, Plaintiff contends that the ALJ offered no explanation for omitting her opined moderate limitations. Id. at 11-13.

### A. Dr. Toll

Plaintiff contends that the ALJ committed reversible error in omitting Dr. Toll's exact opined limitation to changes that are "predictable and introduced gradually" in the RFC, and in failing to explain this omission. An ALJ, however, "is not required to adopt or include all of the exact limitations assessed by a medical source, even if the source is found to be persuasive." Mcfarland v. Kijakazi, No. 4:22-CV-1147 SRW, 2023 WL 6381424, at *5 (E.D. Mo. Sept. 29, 2023) (collecting cases); see also Deck v. Kijakazi, No. 1:22-CV-8-SNLJ, 2022 WL 13688874, at *4 (E.D. Mo. Oct. 21, 2022) (finding that a difference in the RFC's wording and a medical opinion's wording is not automatic error). Rather, the question before the Court is "whether the RFC's limitations are equivalent to the persuasive medical opinion's limitations, or, in other words, whether there is any 'meaningful difference between the two.'" Beyes v. Kijakazi, 2023 WL 1765185, at *10 (E.D. Mo. Feb. 3, 2023) (quoting Deck, 2022 WL 13688874, at *4).

The parties here dispute whether the RFC's limitation to "simple, routine tasks with minimal changes in job duties and setting" is meaningfully different from Dr. Toll's opined limitation to "changes in the workplace that are predictable and introduced gradually." (ECF Nos. 10, 15). For support, Plaintiff relies on the reasoning set forth in Masden v. Saul, No. 4:20-CV-267, 2021 WL 3172934, at *1-3 (W.D. Mo. July 27, 2021) (finding that an RFC limiting the plaintiff to "few, if any, workplace changes" did not adequately incorporate a medical opinion limitation that any changes in the workplace be "gradual" and "predictable"). As the

Commissioner correctly points out, however, similar arguments have been more recently rejected by this Court.  See Beyes, 2023 WL 1765185, at *10; Mcfarland, 2023 WL 6381424, at *5.

In Beyes, the Court rejected the plaintiff's argument that the ALJ had erred in failing to include exact adaptive limitations as opined by agency doctors in the RFC.  In doing so, the Court noted the ruling in Deck and its rejection of Masden, and reasoned:

> In this case, the ALJ limited Plaintiff to 'simple, routine tasks' with 'simple routine work-related decisions' and 'only gradual changes in job settings and duties.' Tr. 21.  ***A gradual change while performing simple, routine tasks does not appear to be practically different from a minimal change while performing simple, routine tasks***.  Plaintiff has not cited to, and the Court cannot independently find, any case law to support that these specific phrases would be error to use interchangeably and would require remand.

2023 WL 1765185, at *10 (emphasis added).

Relying on Beyes, and finding Deck instructive, the Court in Mcfarland found that the ALJ had "captured the requirement for changes to be predictable and introduced gradually by limiting [the plaintiff] to minimal changes in job duties and setting, avoidance of fast-paced work, simple and routine tasks, and only occasional interaction with the general public, coworkers, and supervisors."  2023 WL 6381424, at *6.

Here, Plaintiff's RFC limits her to "simple, routine tasks with minimal changes in job duties and setting"; the avoidance of "fast-paced production work"; and occasional interaction with supervisors, co-workers, and the public.  These adaptive limitations are substantially the same as those discussed in Mcfarland. [2]  For the same reasons as in Deck, Beyes, and McFarland, the Court

---

[2] Plaintiff argues that Beyes and Mcfarland are inconsistent with the Eight Circuit's decision in Gann v. Berryhill, 864 F.3d 947 (8th Cir. 2017).  In Gann, the Court remanded the matter based on a finding that the ALJ had failed to include adaptive restrictions in the RFC assessment.  The Court reasoned that the ALJ had failed to comprehensively describe the plaintiff's limitations in the hypothetical to the VE.  Id. at 952-53.  However, unlike in Gann, the ALJ's RFC assessment here limited Plaintiff to "minimal changes in job duties and settings," not just simple, routine tasks.

finds no meaningful difference between the limitation set forth in the RFC and Dr. Toll's opined limitation to "changes in the workplace that are predictable and introduced gradually." The Court therefore concludes that the RFC determination adequately incorporated Dr. Toll's medical opinion.

### B. LPC Craig

Plaintiff contends that the ALJ committed reversible error in omitting LPC Craig's moderate limitations in the RFC, and in failing to explain this omission. (ECF No. 10). Plaintiff specifically argues that the RFC assessment failed to moderately limit (i.e., account for a 30% reduction in) Plaintiff's abilities to ask simple questions or request assistance, to maintain appropriate behavior and adhere to basic standards of neatness and cleanliness, and to interact with coworkers without exhibiting behavioral extremes. (ECF No. 10 at 12-13).

It is "the ALJ's responsibility to determine the claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of her limitations." Nash v. Comm'r, Soc. Sec. Admin., 907 F.3d 1086, 1089-90 (8th Cir. 2018) (quotation and citation omitted). In doing so, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight" to any medical opinion. 20 C.F.R. § 416.920c(a) (2017). In addition, "SSR 96-8p requires only that the evidence, both medical and non-medical, be discussed in a way that would support each conclusion, not that each conclusion must be individually discussed and independently supported." Wilfong v. Berryhill, No 4:17-cv-2747-SNLJ, 2018 WL 4489453, at *4 (E.D. Mo. Sept. 19, 2018) (citing, inter alia, Garrison v. Astrue, No. 4:11CV1503 FRB, 2012 WL 4336202, at *15 (E.D. Mo. Sept. 21, 2012) (noting that neither the Eighth Circuit nor SSR 96-8p requires the RFC to be presented in a "rigid" or "bullet-point format with each limitation immediately followed by a discussion of the

supporting evidence")); see also Austin v. Kijakazi, 52 F.4th 723, 729 (8th Cir. 2022) ("the ALJ is not required to explicitly reconcile every conflicting shred of medical evidence") (cleaned up).

In evaluating LPC Craig's opinion, the ALJ stated:

> There is also no convincing support in the record for the Mental Medical Source Statement submitted by the claimant's counselor, Jessica Craig, LPC., in December 2022, which is unpersuasive in suggesting marked and extreme limitations in so many areas of work-related mental function (Exhibit 9F). Ms. Craig indicated that she based her findings on the claimant's mental status examinations, however, her own treatment notes do not indicate that such examinations were even performed, and her notations showed the claimant's presentations to be generally normal. Furthermore, Ms. Craig did not acknowledge the claimant's history of substance abuse and medication noncompliance issues. In addition, the claimant often denied feeling depressed during her counseling sessions with Ms. Craig (Exhibits 5F/4, 6 & 11F/17).

(Tr. 31). Although the ALJ generally referenced LPC Craig's suggested marked and extreme limitations, Plaintiff takes issue with the ALJ's failure to explicitly mention her suggested moderate limitations. (ECF No. 10).

Here, the ALJ considered LPC Craig's opinion and determined it to be unpersuasive. The Court finds that the ALJ offered sufficient explanation for this determination by indicating the general the lack of support in the record for such opinion, and by discussing the inconsistencies between LPC Craig's suggested limitations and treatment notes. 20 C.F.R. § 416.920c(a)-(c) (setting forth factors an ALJ must consider in determining persuasiveness of a medical opinion, including supportability and consistency). Contrary to Plaintiff's argument, the ALJ was not required to "mechanically list and reject every possible limitation." McCoy v. Astrue, 648 F.3d 605, 615 (8th Cir. 2011). Upon consideration of the record as a whole, the Court is satisfied with the thoroughness of the ALJ's RFC assessment, which considers Plaintiff's subjective complaints, her daily activities, her response to treatment and medications, and the objective medical evidence. See Abraham v. Kijakazi, No. 1:22-CV-152 SNLJ, 2023 WL 3948816, at *6 (E.D. Mo. Jun. 12,

2023) ("This is not a case when a reviewing court is without the ability to make a meaningful assessment of a challenge to the ALJ's evaluation of medical opinions."). The Court therefore concludes that substantial evidence supports the ALJ's determination regarding LPC Craig's opinion and the resulting RFC assessment. Pate-Fires, 564 F.3d at 942; Buckner, 646 F.3d at 556.

\* \* \* \* \*

For the foregoing reasons, the Court concludes that the ALJ's decision is supported by substantial evidence on the record as a whole.

Accordingly, **IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**.

A separate Judgment shall accompany this Memorandum and Order.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of December, 2024.